GERTRUDE KRUEGER, Appellant, v. BOARD OF
EDUCATION OF CITY OF ST. LOUIS.

Division One, July 30, 1925.

1. **NEGLIGENCE: School Board: Injury to Employee.** A board of
education is not liable in damages to an employee injured by a
food-chopping machine negligently set in motion while she was
cleaning it, the machine having been installed and was being used
under a general statute which empowers a school board, in its. dis-
cretion, to install in the school buildings the necessary apparatus
and appliances, and to purchase the necessary food, to enable it to
provide and sell lunches to children attending the school.

2. ———: ———: ———: **Discretion.** The school-board, in install-
ing such machinery and in purchasing such food as will enable
it to provide and sell lunches to children attending the school,
not for pecuniary profit, but in aid of school efficiency and progress,
is acting in a governmental capacity and in the exercise of a
governmental function; and the fact that the statute authorizes
the school board, in its discretion, to install such machinery, does
not make its use any the less the exercise of a governmental func-
tion, or make it liable in damages to an employee injured by such
machinery.

Corpus Juris-Cyc. References: **Municipal Corporations**, 28 Cyc., p. 1260,
n. 15, 16, 17; p. 1306, n. 77, 78.

Appeal from St. Louis City Circuit Court—*Hon. Robert
W. Hall*, Judge.

AFFIRMED.

*Lich & Miller* for appellant.

(1)  Appellant concedes that the board of education
has by the law of this State been designated as a *quasi-*
corporation and as such is upon the same footing as to
liability for torts as would be a county.  Dick v. Board

of Education, 238 S. W. 1073. (2) A *quasi*-corporation is not liable for torts arising out of the administration of a governmental function or duty, but is liable for acts not performed in that capacity but in the capacity of a private corporation, and also is liable for its torts in the performance of special duties enjoined on it with its consent or voluntarily assumed by it. 15 C. J. 569. (3) The duty of operating a lunch-room is not one enjoined upon the defendant by the State, but to the contrary is one which the defendant has elected to assume. Laws 1921, p. 616.

*Robert Burkham* for respondent.

(1) School districts are not liable, under any circumstances, for the negligence of their officers or employees. And this rule is based upon three distinct and independent grounds, viz.: (a) Boards of education, like counties, are *quasi*-corporations, not municipalities, and *quasi*-corporations are not liable for negligence. (b) Education is a governmental function. (c) Funds of private and *a fortiori* of public charities may not lawfully be diverted from their charitable purposes to pay judgments for torts. Cochran v. Wilson, 287 Mo. 210; Dick v. Board of Education, 238 S. W. 1073. (2) Since one of the reasons why school districts are not liable for tort is that they are engaged in a governmental function, it is immaterial whether the particular activity out of the exercise of which the injury occurred is one imposed by the State as an imperative duty or is one which the school authorities undertook with legislative permission. (a) The Hannon case, 62 Mo. 613, which apparently is responsible for the contention that such a distinction should be made, has been overruled. Swineford v. Franklin County, 72 Mo. 279; Moxley v. Pike County, 276 Mo. 446; Cochran v. Wilson, 287 Mo. 210. (b) Such a distinction is purely arbitrary and, when suggested, has been repudiated by the courts. 28 Cyc. 1260; Tindley v. Salem, 137 Mass. 171; Pope v. New

Haven, 91 Conn. 79; Nicholson v. Detroit, 129 Mich. 246; Emmons v. Virginia, 152 Minn. 295; Wixon v. Newport, 13 R. I. 454. (3) The operation by school authorities of a public school lunch room at cost, for the sole benefit of the pupils, in connection with and as an integral part of the educational system, is a governmental function. (4) Funds of private and *a fortiori* of public charities may not lawfully be diverted from their charitable purposes in order to pay judgments for torts. Cochran v. Wilson, 287 Mo. 210.

LINDSAY, C.—Plaintiff's suit is for damages for personal injuries sustained by her while employed by the defendant in the lunch room and cafeteria, maintained and operated by the defendant in the Cleveland High School, in the city of St. Louis. The negligence charged against defendant, its agents and servants, was the setting in motion of a food-chopping machine while plaintiff was engaged in cleaning it. A general demurrer to the petition was sustained, and judgment for defendant followed. There is no issue as to the merely formal sufficiency of the petition; but the sole issue is whether defendant, as a *quasi*-corporation, is liable at all for negligence in the operation of the lunch room. The plaintiff concedes that defendant, as a *quasi*-corporation, while engaged in the exercise of the *quasi*-corporate and governmental functions, imposed upon it by law, is not liable for its negligence, or the negligent acts of its employees. So much is well settled. [Cochran v. Wilson, 287 Mo. 210; Dick v. Board of Education, 238 S. W. 1073.]

Plaintiff's case is founded upon the claim that the operation of a lunch room in the school, as a thing merely authorized, or permitted by law, was in the nature of a special, voluntary and self-imposed duty; and, not being a duty enjoined upon defendant by the law, such operation of it was not the exercise of a governmental function; and for that reason, the rule of non-liability for negligence announced in the Dick, Cochran and many other cases is not applicable.

310 Mo. Sup.—16.

The determination of the case, therefore, depends upon whether there is a controlling distinction to be made between the performance of an enjoined duty, and the exercise of a power expressly given by the law, whose exercise is not mandatory, but rests in the discretion of such *qwasi*-corporation.

The statute under which defendant acted (Laws 1921, pp. 615, 616) is as follows: "The board of directors, or board of education, shall have the power, in its discretion, to install in the school buildings under its care the necessary apparatus and appliances, and to purchase the necessary food to enable it to provide and sell lunches to children attending the schools; provided, however, that such lunches shall not be so sold for a less price than the cost of the food, exclusive of the cost of the necessary apparatus and appliances and exclusive of costs necessary and incidental to the purchase of the food and the preparing and serving of the lunches."

The foregoing is a general law. The controversy here turns upon the answer to a single question. Does the fact that the defendant was authorized to operate a lunch room, but was not compelled to do so, make its operation other than a governmental function, or, putting it another way, does the element of discretion so distinguish that performance from the duties enjoined upon the defendant, as to take it out of the general rule in respect of liability for negligence in performing the duty?

Upon this question counsel rely upon the holding in Hannon v. St. Louis County, 62 Mo. 313. In that case the county entered into a contract for the laying of certain water pipes to the county insane asylum, and the negligence charged was that of the engineer and contractor. It was held that there was liability.

In that case it was said, (l. c. 317) the test was: "That the county could not have been compelled to enter on the work for whose performance it contracted." It was further said that it was "immaterial whether the thing done from which civil liability ensues, originates in

the free act of the county in the first place, or whether it is legislative permission and its subsequent acceptance by the county, which gives origin to the act whose negligent performance produces the injury complained of.'' It was further pointed out that the Legislature had previously ''recognized the county lunatic asylum as an existing fact, and provided that the county court might commit the insane of that county to the county institution,'' and also before the contract was made, had ''by legislative act'' recited the fact that the asylum was built at the expense of the county, and appropriated $15,000 annually in support of ''the humane objects contemplated by its establishment,'' thus giving the whole matter legislative sanction and support. That case was referred to in Swineford v. Franklin County, 73 Mo. 279. , The grounds upon which it was decided were pointed out, and the facts of the Swineford case distinguishing from those in the Hannon case.

The holding in the Hannon case upon the distinguishing feature of that case was neither distinctly disapproved nor approved. But, in the much later case of Moxley v. Pike County, 276 Mo. 449, both of said cases were referred to, and it was said that the general doctrine of the Hannon case has been disapproved in Swineford's case.

Mexley's case was founded upon injuries received through the removal of a bridge and leaving the place unguarded upon a toll road controlled by the county under legislative authority or permission as successor to a private corporation.

The results reached upon the force of the element of discretion in the act of the defendant are pertinent here. It was said, l. c. 453: ''When, for convenience in the administration of its laws, the State, through the Legislature, calls to its aid those territorial organizations sometimes called, with more or less accuracy, *quasi*-corporations, such as counties, townships and school districts, the question has frequently arisen whether these agencies share, with the State itself, immunity from

common-law liability for the negligence of their officers in the exercise of their territorial duties. The answer, from the courts of this State, has generally been an affirmative one."

Further, pertinent to the issue here it was said, l. c. 454: "In the organization of counties the legislative purpose is to divide the State into convenient districts for the purpose of administering the laws under the eye of legal agencies created for that purpose and convenient of access to the people. Optional powers are frequently given as required by local conditions, and, perhaps, legal prejudices; but these are of the very essence of uniformity—that real uniformity which is exhibited in results rather than in methods of achieving them."

Further on, and rejecting the doctrine of the Hannon case upon the element of discretion entering into the act, it was said, l. c. 456: "Hannon v. County of St. Louis, 62 Mo. 313, is relied on by appellant to sustain the theory that the exercise of the control and management vested in the county court by the Act of 1899, being discretionary and not compulsory, its exercise placed the county in the position and saddled it with the personal liability of a private or municipal corporation with respect to the duties growing out of the position that administrative tribunal had chosen to occupy. This discretion to determine whether this road should become a part of the general system of highways in the State does not differ, even in degree, from the discretion vested in the court in many other respects concerning the establishment or improvement and maintenance of roads and bridges. As for the Hannon case, its general doctrine, even if originally applicable to the question now before us, was abandoned in Swineford v. Franklin County, 73 Mo. 279, and the doctrine of the Reardon case, supra, applied."

In Cochran v. Wilson, 287 Mo. 210, the essential discussion was of the grounds on which the Board of Education was held not liable for negligence. The plaintiff was injured in passing down steps alleged to have

been insufficiently lighted.    There was an extensive re-
view of the cases involving suits against *quasi*-corpora-
tions, mainly counties and special road districts.    The
non-liability of these corporations, in their character as
such, was shown to rest upon a line of rulings almost
unbroken.    It was said, l. c. 221: ''The only variance
from the uniformity of this ruling in regard to the non-
liability of *quasi*-corporations is found in the case of
Hannon v. County of St. Louis, 62 Mo. 313.    This case,
however was impliedly overruled in Swineford v. Frank-
lin County, supra, and was expressly disapproved in the
late case of Moxley v. Pike County, supra.·    The current
of authority, therefore, as we have stated it, is unbrok-
en.''    The holding in Moxley's case was approved.

The Moxley case was decided by Division One, and
Cochran v. Wilson, by Division Two of this court.    In
view of the conclusions reached in those cases, and partic-
ularly in the light of what is said in Moxley's case as
to the element of discretion, and of the express disap-
proval of the holding in Hannon v. St. Louis County, in
both the cases, it cannot be regarded otherwise than as
a repudiation of the doctrine announced in the Hannon
case.

The decision in Dick v. Board of Education, 238 S.
W. 1073, followed that in Cochran v. Wilson.    In Dick's
case the plaintiff was a pupil, and rightfully on the
playground of the school, and was injured by a motor
truck operated by an employee of the defendant in the
course of performance of its corporate duties.

In the Dick case it was said, l. c. 1073:    ''There
can be no doubt that, when the State establishes and pro-
vides for the maintenance, operation, and management
of public schools for the education of all children alike,
at the expense of the public, it is acting in pursuance of
a governmental policy founded solely in the public good.
When these duties are, as in this case (Sec. 11456, R. S.
1919), confided by law to a *quasi*-corporation created
for that purpose, such corporation is charged with the
use of public funds devoted by law to that object.    To

that extent it is simply an instrument of the State Government, and is entitled to no pecuniary profit from its services, which are devoted solely to the public.

"We discussed this principle in the light of numerous authorities cited in our opinion, in Zummo v. Kansas City, 285 Mo. 222, 225 S. W. 934, and held, in substance, that, while a municipal corporation in this State is generally liable for damages resulting from its negligence in the construction and maintenance of the public highways within its limits because the power and duty of the municipality in that respect is conferred upon it largely for the pecuniary profit of the owner and dedicator of the land to such uses and his successors as members of the corporation, there was no such ground for liability in the operation of a hospital under a special provision of its charter, as well as a general power relating to the public health. That the same principle applies to the liability for negligence of the *quasi*-corporate instrumentalities charged by law with duties respecting public education has, since this appeal was taken, been upon full consideration decided by this court in Division Two in the case of Cochran v. Wilson, 229 S. W. 1050. This leaves nothing further to be said."

The statute under which defendant in this case acted was not designed for pecuniary profit to the defendant, and it sets up also a bar against intrenchment upon the funds of the school other than for the initial expense of providing the materials necessary for instituting the service.

There is reason, as well as authority, for holding that the duty undertaken in this case was the exercise of a governmental function, and that its voluntary but authorized assumption did not take from the defendant that immunity from liability which attends the performance of duties imposed.

The power given is given for a public purpose, and to a governmental agency. It is a means, a facility, which the Legislature conceived might be an aid to efficiency and progress in the schools. The power was

given to all boards of education. The exercise of the power was left to the discretion of the respective boards, a discretion to be exercised not in aid of any private interest, but only in the interest of the public. The exercise of the power of discretion in any city or school district is itself an exercise of governmental power. The actual execution of the thing thus deemed necessary and expedient, is not less so.

There is no good reason why a school district should be liable to an action for damages because voluntarily, yet pursuant to a general authority, it furnishes a certain convenience in aid of its schools, when if the furnishing of that convenience were made mandatory, there would be no liability under a like charge of negligence. In one case the necessity and expediency would be determined by the Legislature; in the other, the necessity and expediency would be left by the Legislature to be determined by the local governmental agency. In either event, it is the same power that is exercised, and for the same purpose. The exercise of the right or power by the local governing body is not of the nature of a contract.

In the Hannon case stress was laid upon the "element of consent." It was said: "For it is the element of consent which attaches civil liability, with its attendant consequences, to the act done. In other words, as certain results flow from the acceptance by a *quasi*-corporation of a special duty, or a special authority, it is, therefore, the exercise alone of that volition which fixes its liability." In this case the exercise of "volition" was the exercise of a purely governmental function.

The "element of consent" was no more than a determination that exercise of a granted power was necessary and expedient. The power executed was the power of the State. Cases dealing with the question of there being a distinction between duties mandatory, and duties voluntarily assumed as authorized, may be seen. [Tindley v. Salem, 137 Mass. 171; Pope v. New Haven, 91 Conn. 79; Nicholson v. Detroit, 129 Mich. 246; Emmons v. Virginia, 152 Minn. 295.] The tenor of these

cases is that so far as governmental acts are concerned, no distinction is to be made between those directed to be done, and those authorized to be done.

The true ground of distinction to be observed is not so much that the duty is mandatory rather than self-imposed pursuant to authority of a general law, but, is, that the duty assumed is public in character, and not for profit, but for the public good, and is directly related to and in aid of the general and beneficent purposes of the State. This principle is stated in 28 Cyc. 1260, in the discussion of the grounds of liability or non-liability of municipal corporations: "On the other hand, whether the duty is imperatively imposed or voluntarily assumed, immunity from liability is made to depend upon the condition that the acts or duties are public, as distinguished from such acts as inure to the special profit or advantage of the corporation rather than the general good; or are legislative and discretionary, as distinguished from ministerial."

Akin to the foregoing is what was held in Murtaugh v. St. Louis, 44 Mo. 479; Ulrich v. St. Louis, 112 Mo. 138; Zummo v. Kansas City, 285 Mo. 222.

The judgment of the trial court should be affirmed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by LIND-SAY, C., is hereby adopted as the opinion of the court. *Ragland, P. J., Graves* and *Atwood, JJ.,* concur.